[Cite as *Rapp v. Sullivan*, 2013-Ohio-5378.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BRIANNA RAPP, | ) | |
| | ) | CASE NO.    12 MA 227 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| WILLIAM SULLIVAN, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court,
Case No. 12CV1857.


JUDGMENT:     Affirmed.


APPEARANCES:
For Plaintiff-Appellant:     Attorney Mark Verkhlin
839 Southwestern Run
Youngstown, Ohio  44514


For Defendant-Appellee:     Attorney William Pfau, III
P.O. Box 9070
Youngstown, Ohio  44513


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


Dated:  December 4, 2013

VUKOVICH, J.

{¶1}  Plaintiff-appellant Brianna Rapp appeals the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendant-appellee William Sullivan.  Appellant urges that the testimony contained in her deposition created a genuine issue of material fact as to whether appellee is liable or partially liable for the collision between the parties' vehicles during a shooting.  We conclude that the contents of the deposition fail to raise a genuine issue of material fact as to whether appellee was proceeding in a lawful manner or caused or contributed to the accident.  Consequently, the judgment of the trial court is hereby affirmed.

## STATEMENT OF THE CASE

{¶2}  Appellant Brianna Rapp filed suit against appellee William Sullivan, alleging his negligence caused a vehicular collision on September 14, 2008.  She also sued Cordelia Traylor, alleging that she negligently entrusted the vehicle to her son.  Sullivan filed a motion for summary judgment, relying on Rapp's testimony at deposition.  In pertinent part, he argued that her testimony that she ducked her head to avoid gunfire while at a stop sign and then accelerated though the intersection can only be construed to conclude that she caused the accident by blindly accelerating into his path.  He urged that there was no evidence that any conduct by him was a causative factor, noting that she was unable to estimate his speed.

{¶3}  Rapp responded that Sullivan's argument dealt with comparative or contributory negligence, not failure of liability.  She urged that the mere fact that she had a stop sign should not preclude her claim as she testified that she did not see Sullivan's vehicle before she entered the intersection, pointing out that R.C. 4511.43(A) provides that after stopping, the driver shall yield the right-of-way to a vehicle approaching so closely as to constitute an immediate hazard during the time the driver is moving across the roadway.  She then concludes that it can be inferred from her testimony that Sullivan was driving at a very high rate of speed because she testified that she ascertained both directions were clear before the gunfire started and because she was in the middle of Sullivan's lane when he hit her.

**{¶4}** Rapp's deposition contained only the defense's cross-examination of Rapp as it does not appear that her counsel conducted a direct examination. Rapp testified that in the early evening prior to sunset, she was driving west on East Boston Avenue. She approached the stop sign at the intersection with Southern Boulevard, intending to proceed straight on Boston. The traffic on Southern Boulevard did not have a stop sign.

**{¶5}** Rapp stopped at her stop sign for approximately ten to fifteen seconds. (Tr. 17). She looked to her right and then to her left and noticed no cars approaching in either direction. (Tr. 24-25). At that point, she heard four to five shots. When the next shot shattered her passenger window, grazed her temple, and shattered her driver's side window, she ducked her head next to the steering wheel so that it was in front of the radio and accelerated faster than normal into the intersection while more shots continued to be fired. (Tr. 18-19, 21-22, 29). Rapp believed that at least two other shots hit her vehicle. (Tr. 39-40).

**{¶6}** Before her vehicle could clear the intersection, Sullivan's vehicle, approaching from the right/north, collided into the passenger side of her vehicle, pushing it up to a house on the corner. (Tr. 25-27, 36). Rapp stated that she could not estimate the speed of Sullivan's vehicle because she never saw it. (Tr. 35). Shots continued to be fired even after the crash. (Tr. 27-28). Sullivan alighted from his vehicle holding a handgun and ran away from the direction of the shooters. (Tr. 28, 30-31). Rapp concluded there was more than one person shooting based upon the different shots. (Tr. 31). She could not say whether Sullivan fired any shots. (Tr. 28).

**{¶7}** Rapp was not cited for the accident at the scene, but an officer told her the city would thereafter decide whether to charge her. (Tr. 33). She was taken to the hospital for treatment of the bullet wound along the temple, a sprained finger, and abdominal pain. At the end of the deposition, counsel asked if there would have been an accident if she had not been shot at, ducked down, put her foot on the gas, and pulled into the intersection, to which she responded in the negative. (Tr. 50).

**{¶8}** On September 13, 2012, the magistrate granted summary judgment in favor of Sullivan. The magistrate also issued findings of fact and conclusions of law

finding in pertinent part that: at or about the same time as Rapp stopped her vehicle, Sullivan was travelling southbound on Southern Boulevard; there was no evidence that Sullivan was negligent in the operation of his vehicle so as to cause the collision; and the accident was solely caused by Rapp's failure to yield the right-of-way at the intersection where Sullivan had no stop sign. Rapp filed objections to the magistrate's decision focusing on these three findings and the ultimate conclusion that reasonable minds can only come to a conclusion adverse to her position. On November 28, 2012, the trial court adopted the magistrate's decision and entered summary judgment in favor of Sullivan, finding no just cause for delay. Rapp filed a timely notice of appeal.

<u>SUMMARY JUDGMENT EVIDENCE</u>

{¶9} Besides relying upon her deposition already filed in the action by Sullivan, Rapp attached to her response papers from a police file that had been received by fax machine. As these were unauthenticated, Sullivan filed a motion to strike them.

{¶10} In ruling on a motion for summary judgment, unless the other party has failed to object, the court can only consider evidence properly submitted under Civ.R. 56, which includes pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. Civ.R. 56(C); *State ex rel. Gilmour Realty, Inc. v. Mayfield Heights*, 122 Ohio St.3d 260, 910 N.E.2d 455, 2009-Ohio-2871, ¶ 17 (court may consider evidence that does not comply with Civ.R. 56(C), such as unsworn and unauthenticated documents, if there is no objection). Sworn or certified copies of papers referred to in the affidavit shall be attached thereto or served therewith. Civ.R. 56(E).

{¶11} This requirement is satisfied by attaching the papers to the affidavit and stating that they are true copies and reproductions. *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 423 N.E.2d 105 (1981). Other documents attached to summary judgment motions that are not incorporated by a properly framed affidavit do not constitute proper summary judgment evidence under Civ.R. 56(C) and cannot be utilized by the court if there has been an objection entered as here. *See Citibank*

*v. McGee*, 7th Dist. No. 11MA158, 2012-Ohio-5364, ¶ 14, citing *Corrigan*, 66 Ohio St.2d at 467.

**{¶12}** Thus, we shall not consider the unauthenticated attachments to her response, which do not add to her cause in any event. Notably, one page was an exhibit already presented to Rapp by Sullivan's attorney during the deposition and was attached to that deposition which Sullivan filed in support of his motion for summary judgment. Thus, appellee's motion to strike would not apply to the portions of that page that needed to be viewed to understand the portion of Rapp's testimony where she was asked by the defense to confirm the location of the collision and to place x's where she believed the shooters were located. (Tr. 36-37). Thus, Rapp's deposition testimony on cross-examination (with an attached exhibit) was the only summary judgment evidence presented for evaluation.

<u>SUMMARY JUDGMENT</u>

**{¶13}** Summary judgment can be granted where there remain no genuine issues of material fact for trial and where, after construing the evidence most strongly in favor of the nonmovant, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing Civ.R. 56(C). The burden of showing that there is no genuine issue of material fact initially falls upon the party who files for summary judgment. *Id.*, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996).

**{¶14}** Thereafter, the nonmovant may not rest upon the mere allegations or denials of the party's pleadings but must respond by setting forth specific facts showing there is a genuine issue for trial. *Id.*, citing Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E). Although courts are cautioned to construe the evidence in favor of the nonmoving party, summary judgment is not to be discouraged where a nonmovant fails to respond with evidence supporting the essentials of his claim. *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993).

**{¶15}** Summary judgment is appropriate when there is no genuine issue as to any material fact, and the existence of a material fact depends on the substantive law

of the claim litigated. *DiBlasio v. Sinclair*, 7th Dist. No. 08MA23, 2012-Ohio-5848, ¶ 32, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (and noting the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

<u>RIGHT OF WAY</u>

**{¶16}** To establish a claim of negligence, the plaintiff must show the existence of a duty, breach of that duty, and an injury resulting proximately therefrom. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). The failure of any of these elements will defeat the action. Duty refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff. *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). Proximate cause requires the event to be a natural or continuing sequence, without which the injury would not have occurred. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

**{¶17}** In order to consider the issue of the contributory or comparative negligence of a driver with the right-of-way, there must be some evidence that the driver was driving unlawfully. *See Lydic v. Earnest*, 7th Dist. No. 02CA125, 2004-Ohio-3194, ¶ 30, citing *Deming v. Osinski*, 24 Ohio St.2d 179, 265 N.E.2d 554 (1970) (reversing trial court's decision that motorcyclist with the right-of-way was required to "look, look effectively and continue to look and otherwise remain alert" in a case where the motorcyclist looked at his friend at the gas station just prior to a car pulling in front of him). This is because right-of-way is statutorily defined as the right of a vehicle "to proceed uninterruptedly in a lawful manner" in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path. R.C. 4511.01(UU)(1).

**{¶18}** A driver approaching a stop sign shall stop before entering the intersection. R.C. 4511.43 (A). After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so

closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways. *Id.*

**{¶19}** A driver traveling within the statutorily defined right of way has preferential status. *Lydic*, 7th Dist. No. 02CA1225 at ¶ 28, citing *Morris v. Bloomgren*, 127 Ohio St. 147, 152, 187 N.E.2d 2 (1933). Thus, a driver with the right of way has no duty to look for dangers that might be approaching. *Deming*, 24 Ohio St.2d at 181. Specifically, that driver need not anticipate that a driver with a stop sign would intrude upon his right-of-way. *Lydic*, 7th Dist. No. 02CA125 at ¶ 35. "Under Ohio law, the driver of a motor vehicle proceeding over a through street in a lawful manner has the absolute right of way over a vehicle on an intersecting stop street, and the driver on the through street may ordinarily assume that such right of way will be respected and observed by the driver of the vehicle on the intersecting stop street." *Timmons v. Russomano*, 14 Ohio St. 2d 124, 236 N.E.2d 665 (1968).

**{¶20}** "Whether or not the driver exercised his common-law duty of ordinary care is not a consideration in determining whether the vehicle was proceeding in a lawful manner." *Lydic*, 7th Dist. No. 02CA125 at ¶ 32. "Only after it has been found that the vehicle is not proceeding in a lawful manner, by violating a law or ordinance, does the consideration of the driver's common-law duty to use ordinary care come into play." *Id.* The only exception would be if the driver with the right of way has realized that there is a clearly dangerous condition in the right-of-way and then fails to use ordinary care thereafter. *Id.* at ¶ 34.

**{¶21}** Finally, it has been stated that the statutes on the right-of-way would be emasculated if the plaintiff could put the defendant with the right of way on an equal plane with her when their paths converge. *See Morris v. Bloomgren*, 127 Ohio St. 147, 152, 187 N.E. 2 (1933) (dealing with right of way for vehicles approaching intersection from the right).

ASSIGNMENT OF ERROR

**{¶22}** Appellant's sole assignment of error contends:

**{¶23}** "The Trial Court erred when it overruled the Objections to the Magistrate's Decision and adopting the decision of the magistrate when questions of

material fact existed as to whether Appellee was, in fact, the negligent party, as Appellee failed to show that summary judgment was proper pursuant to Civ.R. 56."

**{¶24}** In support of this argument, Rapp urges that questions of material fact are present as to whether the accident was caused in whole or in part by Sullivan's negligence, insisting that, at best, Sullivan's arguments set forth a comparative negligence argument for trial. Rapp notes that merely because she had a stop sign and Sullivan did not does not require summary judgment against her. Rapp asserts that she had a clear path when she entered the intersection. Since she did not see any vehicles when she originally looked to the right, she presumes that Sullivan must have been travelling at a high rate of speed. She believes that the fact that she was already in the middle of Sullivan's lane when this collision took place suggests his negligence.

**{¶25}** In her argument, but not in her testimony, Rapp presumes that Sullivan was driving at an excessive speed because she did not see him when she originally looked both ways at the intersection. Notably, she presented no evidence but her deposition testimony and that was on cross-examination by defense counsel. Rapp did not testify that Sullivan was driving at an excessive speed so as to make the driving unlawful. She did not even testify that he was exceeding the speed limit, which can be different from driving at an excessive speed so as to make the driving unlawful. In fact, she presented no summary judgment evidence as to what the speed limit was for Sullivan.

**{¶26}** Rapp's testimony suggests that she responded to an emergency situation but does not specify Sullivan's duty arose as it does not provide specific summary judgment evidence that his vehicle was not proceeding in a lawful manner. Nor was there evidence that Sullivan became aware of the impending collision and failed to exercise reasonable care upon noticing her acceleration into the intersection. Likewise, there is nothing showing that his act or failure to act proximately caused her injury. Rather, considering the dearth of summary judgment evidence presented here, reasonable minds could only find that the shooters and then her response thereto caused the collision.

**{¶27}** Rapp looked right (the direction appellee came from) and then left.  She said that she saw no cars.  At that point, she heard four to five gunshots.  Then, a bullet shattered her passenger window, grazed her temple, and shattered her driver's window.  She ducked her head down by the radio and steering wheel and accelerated faster than normal through the intersection without looking right again.  Rapp testified that she was stopped for 10-15 seconds.  The fact that she testified that she originally saw no cars toward the right cannot by itself constitute summary judgment evidence that appellee was travelling at an excessive rate of speed as other events occurred in the meantime.  And, we cannot discern how the fact that she made it halfway through appellee's lane of travel assists her argument, especially since she stated that she accelerated faster than usual into the intersection.

**{¶28}** In sum, Sullivan had a right to use the southbound lane and had no stop sign requiring him to yield.  There is no evidence that his vehicle was not proceeding in a lawful manner  Thus, Sullivan, as the driver with the right-of-way, had the right to expect that appellant would respect his right to use that lane.  He had preferential status.  He had no duty to keep on the look-out and anticipate that Rapp might accelerate into his lane from a stop sign with her head down.  Finally, there is nothing to suggest that Sullivan noticed Rapp's vehicle in his right-of-way and then acted negligently.

**{¶29}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.


Donofrio, J., concurs.
Waite, J., concurs.